UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Peter Michael Guevara (1),<br><br>    Defendant. | Case No. 21-cr-241 (ECT/DTS)<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

Defendant Peter Michael Guevara is charged with receipt and possession of child pornography in violation of 18 U.S.C. § 2252(a)(2), (a)(4)(B), and (b)(1). Dkt. No. 1. Guevara moves to suppress evidence and statements resulting from allegedly invalid searches and seizures. Dkt. Nos. 80-81. Specifically, Guevara argues: (1) the search warrant executed on October 15, 2019 lacked probable cause and was based on impermissibly subjective observations; (2) the November 12, 2020 search of his person and seizure of two phones violated his Fourth Amendment rights; (3) statements made on November 12, 2020 violated his Fifth Amendment rights; and (4) the search warrant executed on December 8, 2020 lacked probable cause and resulted from an illegal search.[1] Dkt. Nos. 80, 81, 147. The Government opposes the suppression of this

---

[1] Guevara represented that he also planned to brief the distinction between an administrative warrant and a formal arrest warrant to challenge his seizure in Florida. Dkt. No. 81 ¶ 15. However, he has provided no argument or authority on this issue and has therefore waived it. *See United States v. Edwards*, 563 F.Supp.2d 977, 994 (D. Minn. 2008) (finding that failure to support a motion to suppress with evidence or legal argument suggests that "either that defendant waived or abandoned such motions or that they were frivolous").

evidence. For the following reasons, the Court recommends that the motions to suppress be denied except as to a single statement Guevara made while seated on his couch in handcuffs.

**FACTUAL BACKGROUND**

In 2014, Guevara was convicted in Sherburne County, Minnesota of possession of the pornographic work of minors. *See State v. Guevara*, Case No. 71-CR-13-217 (Minn. Dist. Ct. 2014). In October 2018, after his release and while subject to intensive supervision, Guevara absconded to Florida. Gov. Exs. 4 at 7, 6.[2] Guevara was located and arrested in Okaloosa County, Florida on December 5, 2018 for fleeing supervision and failing to register as a sex offender. Gov. Ex. 6. He was transported back to Minnesota and sentenced to 300 days in the custody of the Ramsey County Department of Corrections (Ramsey County). *Id.*

**I.    2019 Warrant and Statements**

In July 2019, Deputy U.S. Marshal Matthew Moran learned that Guevara had left two cameras, a photo scanner, a voice recorder, and an SD card in Florida. *Id.* Moran consulted with Guevara's Intensive Supervised Release (ISR) Agent in Ramsey County, Corey Barth, who recognized the devices as ones he had previously seized from Guevara

---

[2] At the hearing on these motions, the Government introduced six exhibits. Gov. Ex. 1 is the Minnesota Department of Corrections Conditions of Release form Guevara signed on April 22, 2020. Gov. Ex. 2 is the Intensive Supervised Release Policies and Procedures form Guevara and Agent Barth signed on April 27, 2020. Gov. Ex. 3 is the Ramsey County Department of Community Corrections Electronic Device Agreement Guevara and Agent Barth signed on July 6, 2020. Gov. Ex. 4 is a Supervised Release Violation Report from November 17, 2020. Gov. Ex. 5 is a Federal Search Warrant, 20-mj-900, signed by then-United States Magistrate Judge Menendez on December 22, 2020. Gov. Ex. 6 is a Federal Search Warrant, 19-mj-668, signed by United States Magistrate Judge Leung on October 29, 2019. Guevara's Intensive Supervised Release Agent, Corey Barth, testified at the hearing.

in 2017, which were returned to Guevara after he claimed they belonged to his mother. *Id.*; Tr. 16.³ The Okaloosa County Sheriff's Office mailed these devices to Moran, who applied for a federal warrant to search them for evidence of possession of child pornography or of failure to register as a sex offender. Gov. Ex. 6. The search warrant included details about Guevara's criminal history, Guevara's response to learning the devices had been seized ("Guevara told [Investigator Kelting] he would be interested in cooperating with the . . . investigation if a "deal" could be worked out related to whatever crimes might be discovered related to [his] electronic devices"), Guevara's physical reaction to learning the devices had been located ("Guevara immediately became very nervous . . . the vein on the side of Guevara's neck started beating rapidly at that moment"), Moran's assessment of Guevara's reaction ("Based on my training, experience and consultation with other law enforcement officers, I know that type of physical reaction to a statement can be a sign of stress or worry"), and Moran's personal experience with electronic devices and their use by "individuals involved in the collection and distribution of child pornography." *Id.* The magistrate judge signed the search warrant on October 15, 2019. *Id.* Guevara argues the search warrant lacks probable cause and was improperly based on Moran's subjective statements and moves to suppress evidence uncovered by the search. Dkt. Nos. 81, 147 at 16-17. Guevara has not identified the evidence Moran discovered, but the Court presumes it was unfavorable.

---

³ Dkt. No. 146. References to the transcript of the January 10, 2024 Evidentiary Hearing are cited as "Tr."

3

## II.    Conditions of Release

On April 27, 2020, Guevara was released from Ramsey County custody subject to a variety of conditions stemming from three sources: (1) Minnesota Department of Corrections (DOC) Conditions of Release; (2) ISR Policies and Procedures; and (3) Ramsey County's Electronic Device Agreement. *See* Gov. Exs. 1, 2, 3. Relevant to Guevara's suppression motions, the DOC Conditions of Release required:

- Standard Condition 2: The offender must submit to any unannounced visits or searches by the agent/designee of the offender's person, residence, possessions, cell phone, vehicle, or premises.
- Special Condition 6: The offender must disclose to the agent/designee all computers, internet capable devices, or digital storage devices within the offender's possession or control within 24 hours of first possessing or accessing such devices. All devices are subject to search and monitoring. The offender is responsible for any material found on these devices.

Gov. Ex. 1. The ISR Policies and Procedures required Guevara to have weekly contacts with Agent Barth involving discussions, walk throughs, and random searches to ensure he remained in compliance with his obligations. Gov. Ex. 2; Tr. 30-31. These policies also limited Guevara to possessing one cellphone. Gov. Ex. 2. Ramsey County's Electronic Device Agreement required Guevara to consent to "unannounced search and examination at any time or for any reason, with or without reasonable suspicion, by Supervising Agent/Designee, of any and all electronic devices to which [he] has access, possession, or control," and to "provide a complete and accurate inventory of all electronic devices owned, possessed, and/or used by [him], as well as their login names and passwords." Gov. Ex. 3. This Agreement confirmed that Guevara had "no expectation of privacy regarding the use of any electronic device or the information stored on any electronic device." *Id.* Moreover, the Agreement notified Guevara that his electronic devices are "subject to seizure by the Supervising Agent/Designee if, during a search,

4

any evidence of a violation . . . is indicated." *Id.* Pursuant to these conditions, policies, and agreements, Guevara was allowed to possess one flip phone, a Blu-Ray player, and a copy machine, but no internet-capable phone or tablet. Tr. 32-35, 39. Guevara confirmed in writing that he understood all of these restrictions. Tr. 24-26, 35-36; Gov. Exs. 1, 2, 3.

### III. November 12, 2020 Search, Seizure, and Statements

In early November 2020, Agent Barth received information via email from a confidential informant (CI) that Guevara possessed an unauthorized smartphone and tablet he would hide during compliance searches.[4] Tr. 44-45. Agent Barth called the CI, a member of Guevara's family, and confirmed the information. Tr. 44-46, 67-68. Because such possession violates the terms of Guevara's release, Agent Barth reached out to the DOC Fugitive Unit to set up a compliance search. Tr. 45-47; Gov. Ex. 4 at 5.

On November 12, 2020, three officers from the Fugitive Unit stopped Guevara on the sidewalk outside his car when he arrived home. Tr. 51-52. The officers conducted an "agent/officer safety pat-down search" and discovered an Apple iPhone and several SIM and SD cards in Guevara's front jacket pocket. Tr. 52-54. The officers also identified a flip phone on the front passenger seat of the car. Tr. 54. "Within the minute" after the officers stopped Guevara and executed the pat-down search, Agent Barth and three other ISR agents arrived to conduct the compliance search of Guevara's home and vehicle. Tr. 51-52, 78. Agent Barth asked Guevara if the flip phone was his approved registered cell phone, and Guevara confirmed it was. Tr. 54-55. Agent Barth asked Guevara who owned

---

[4] This CI had earlier informed Agent Barth that Guevara was violating a condition of release by driving a motor vehicle without prior approval. Tr. 43-44. Agent Barth confirmed this violation with Guevara, who "took full responsibility for his actions." Gov. Ex. 4 at 9.

5

the iPhone, and Guevara responded that it had been forgotten by a friend he had driven home from work. Tr. 53-54. The officers took custody of the iPhone. Tr. 57. According to Agent Barth, Guevara violated his conditions of release merely by having the unauthorized iPhone in his possession. Tr. 46-57, 65-66, 80.

The ISR agents performed a compliance search of Guevara's residence. Tr. 58-59. During this search, Guevara was seated on a chair and "likely" handcuffed. Tr. 56-57, 59. At some point during the search, Agent Barth and ISR Agent David Murray asked Guevara to disclose the iPhone's 4-digit passcode, pursuant to his conditions of release, but Guevara "said he did not have the passcode and would not provide it." Tr. 57-59. After a 45-minute search, the Agents seized the phones, the SIM and SD cards, and some cameras they found in the residence. Tr. 60-61. At that point, the Fugitive Unit officers formally arrested Guevara. Tr. 60-61. Guevara challenges the search and seizure for lacking reasonable suspicion, resulting from a CI's unverified tip, and being executed by unauthorized individuals. Dkt. No. 147 at 4-12. He also moves to suppress statements made to the agents for lacking proper *Miranda* warnings. *Id.* at 12-14.

IV.   **December 8, 2020 Warrant**

After seizing the iPhone, Agent Murray conducted a preliminary forensic search and discovered "77 images of child pornography and 27 images of child erotica," in addition to child pornography videos. Tr. 62. Agent Murray also discovered Guevara's insurance information and a photograph of Guevara's son and grandson on the iPhone. Tr. 63. Agent Murray turned the iPhone over to the FBI. Tr. 63-64. Agent Robert J.E. Blackmore applied for a federal warrant to search the iPhone, flip phone, cameras, and SD and SIM cards. Gov. Ex. 5. The warrant affidavit included Guevara's criminal history,

details about the CI's tip and the compliance search, and the results of Agent Murray's "partial extraction" of the iPhone. *Id*. The magistrate judge signed the search warrant on December 8, 2020. *Id.* Guevara argues the warrant affidavit lacks probable cause and relies on illegally seized evidence. Dkt. No. 147 at 14-16.

## CONCLUSIONS OF LAW

I.   **October 15, 2019 Warrant**

   A.   Probable Cause

Guevara argues the October 15, 2019 warrant to search his Florida devices lacked probable cause. A search warrant is supported by probable cause if, "based on the totality of the circumstances set forth in the application and affidavits, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Johnson*, 528 F.3d 575, 579 (8th Cir. 2008) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "The standard is 'not a high bar,' and it 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Edwards*, 891 F.3d 708, 711 (8th Cir. 2018) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)).

In reviewing a warrant, great deference is accorded the issuing judge's determination of probable cause. *United States v. Hudspeth*, 525 F.3d 667, 674 (8th Cir. 2008). "Judges may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a search warrant." *United States v. Alexander*, 574 F.3d 484, 490 (8th Cir. 2009) (internal quotations omitted). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 238-39.

Guevara argues Moran's affidavit utilizes "boilerplate" language and fails to establish a nexus between his Florida devices and child pornography. Dkt. No. 80 at 1-2; 147 at 16-17. This argument fails for two reasons. First, Guevara fails to account for numerous facts linking those devices to possible evidence of child pornography. This evidence includes that Guevara absconded from supervision, Guevara's criminal history, Agent Barth's identification of the devices as items he previously seized from Guevara but returned to him when he claimed they were not his, and Guevara's implicit admission, in response to learning his devices had been seized, that he was interested in working out a "deal" regarding any crimes that might be uncovered on the devices. *See* Gov. Ex. 6 ¶¶ 4, 14, 16. Second, Guevara fails to address that the warrant also authorized Moran to search for evidence that Guevara failed to register as a sex offender in Florida. *See id.* at 3. The affidavit describes with particularity how the devices could hold time, date, and GPS information establishing non-compliance with registration requirements. *See id.* ¶¶ 8, 19-25. These facts are sufficient to illustrate a "fair probability" that evidence of a crime would be found on Guevara's devices.[5] *See Johnson*, 528 F.3d at 579.

B.  Moran's Subjective Statements

Guevara also moves to "suppress" the portion of the October 15, 2019 warrant affidavit containing Moran's evaluation of his physical reaction to learning the devices had been located. Dkt. No. 81 at 2-3. After interviewing Guevara in connection with the devices found in Florida, Investigator Kelting allegedly told Moran, "Guevara immediately

---

[5] In the warrant affidavit, Moran also described Guevara's reaction to learning the devices had been seized and evaluated that reaction. Gov. Ex. 6. Guevara separately moves to "suppress" Moran's statements as improperly subjective. *See infra* Section I.B. Even without the allegedly subjective statements, there was probable cause for the warrant to search Guevara's devices.

8

became very nervous when he heard that [the devices had been seized]" and "the vein on the side of Guevara's neck started beating rapidly at that moment." Gov. Ex. 6. Moran comments on that physical reaction in the affidavit, stating, "Based on my training, experience and consultation with other law enforcement officers, I know that type of physical reaction to a statement can be a sign of stress or worry." *Id.* Guevara argues Moran's observation is improperly suggestive of guilt and Moran is not qualified to evaluate his reaction. Dkt. No. 81 at 2-3.

Motions to suppress are an avenue for defendants to exclude illegally obtained evidence, not to evaluate whether evidence is relevant or prejudicial. *See*, *e.g.*, *United States v. Herrin,* 851 F. App'x 60, 61 n.1 (9th Cir. 2021) ("Herrin's motion was a motion in limine and not a motion to suppress because it sought to exclude evidence based on evidentiary grounds and not on grounds that the evidence was illegally obtained."). While Guevara may seek to preclude the introduction of this evidence at trial by filing a motion in limine to exclude it, it is not the proper subject of a motion to suppress.

## II.     November 12, 2020 Search and Seizure

Guevara argues that the November 12, 2020 pat down and the seizure of an iPhone and his flip phone violated the Fourth Amendment. The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. An individual asserting Fourth Amendment rights "must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *United States v. Barragan*, 379 F.3d 524, 529 (8th Cir. 2004) (citing *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978)). "[T]he reasonableness of a search is determined 'by assessing,

on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *United States v. Knights*, 534 U.S. 112, 118-19 (2001) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)). When an individual is released from prison subject to a "clear and unambiguous" search condition, it "significantly diminishes [the] reasonable expectation of privacy." *Samson v. California*, 547 U.S. 843, 852 (2006) (quoting *Knights*, 534 U.S. at 119-20); *see also United States v. Makeeff*, 820 F.3d 995, 1000 (8th Cir. 2016) ("Probationary searches—whether for law enforcement or probationary purposes—are acceptable under *Knights* if based upon reasonable suspicion (or potentially a lesser standard)."). In fact, the Supreme Court has upheld suspicionless searches of parolees because they "d[o] not have an expectation of privacy that society would recognize as legitimate." *Samson*, 547 U.S. at 853. As the Eighth Circuit has confirmed, "Defendants under supervision have a diminished expectation of privacy . . . and suspicionless searches are generally permissible so long as the defendant had notice that he was subject to such searches." *United States v. Leiter*, No. 08-CR-0270(1), 2017 WL 4551213, at *3 (D. Minn. Oct. 11, 2017); *see also United States v. Jackson*, 866 F.3d 982, 985 (8th Cir. 2017) ("Given Jackson's diminished expectation of privacy as a supervised releasee, and the clear notice that his cell phone was subject to search, Jackson did not enjoy an expectation of privacy in his cell phone that society would recognize as legitimate.").

First, Guevara argues that the search of his person and the seizure of the phones were invalid because the officers and agents lacked reasonable suspicion. However, reasonable suspicion was not necessary to conduct the search because Guevara had no

10

legitimate expectation of privacy. DOC Conditions of Release, which Officer Barth reviewed with Guevara, put him on notice that he was subject to "unannounced visits or searches by the agent/designee of the offender's person, residence, possessions, cell phone, vehicle, or premises." Tr. 31-32, 40; Gov. Ex. 1 (Standard Condition 2). Further, Guevara knew that all devices found in his "possession or control" would be "subject to search and monitoring." Tr. 24; Gov. Ex. 1 (Special Condition 6). Moreover, the Ramsey County Electronic Device Agreement reiterated that Guevara had "no expectation of privacy regarding the use of any electronic device or the information stored on any electronic device." Tr. 39; Gov. Ex. 3. Finally, Guevara was on notice that his electronic devices were "subject to seizure by the Supervising Agent/Designee if, during a search, any evidence of a violation . . . is indicated." Tr. 41; Gov. Ex. 3. Because Guevara knew he was subject to ISR search conditions, he had no legitimate expectation of privacy in any devices found in his possession or control. The agents needed no reasonable suspicion to search him.

Even so, Agent Barth had reasonable suspicion to conduct the search. "Reasonable suspicion exists when, considering the totality of the circumstances known to the officer at the time, the officer has a particularized and objective basis for suspecting wrongdoing." *United States v. Hamilton*, 591 F.3d 1017, 1022 (8th Cir. 2010). Agent Barth received information from a CI that Guevara had an unauthorized smartphone and tablet that he would hide during compliance searches. Tr. 44-45. This CI had previously provided Agent Barth a reliable tip about a vehicle Guevara was driving without authorization. Tr. 43-44. This tip, in combination with Guevara's criminal record and previous history of violating release conditions, creates a "particularized and objective basis for suspecting

11

that Guevara possessed an unauthorized device, in violation of his conditions" of release. *Hamilton*, 591 F.3d at 1022.

Second, Guevara argues the "informant-based search" was invalid because the CI offered only "conclusory statements" without giving the basis for his or her knowledge. Dkt. No. 147 at 4-5. Guevara derives these standards from the requirements for search warrants based on CI tips. Dkt. No. 147 at 4-5 (citing *Gates*, 462 U.S. at 238). However, the issue with Guevara's argument is that search warrants require probable cause, whereas compliance searches, whether or not "informant-based," require no suspicion at all. *See Leiter*, 2017 WL 4551213, at *3. Unlike obtaining a search warrant, the ISR agents needed no basis to stop Guevara and search him. Even so, the CI's tip was not "conclusory," as defined by the case Guevara cites, in which the magistrate had "virtually no basis at all for making a judgment regarding probable cause." *Gates*, 462 U.S. at 239. Barth learned from the CI, a member of Guevara's family who had previously provided a reliable tip, that Guevara possessed unauthorized devices. Tr. 44-46, 67-68. Though Barth needed no suspicion to execute a search, he had sufficient reason to do so.

Third, Guevara argues that the search was invalid because the Fugitive Unit was not authorized to conduct the pat down. Guevara argues that only an "intensive supervision agent or his or her 'designee'" was allowed to conduct an unannounced search. Dkt. No. 80 at 8. However, the Eighth Circuit has held that law enforcement officers may assist with probationary searches, even if not explicitly identified by a probation condition, so long as they are acting at the direction of the probation agent. *United States v. Brown*, 346 F.3d 808, 812 (8th Cir. 2003) ("[T]he governmental interest in ensuring probation officer safety outweighs any marginal, additional intrusion into

Brown's privacy resulting from the task force agents' presence."). Agent Barth testified that he "orchestrated the search," coordinated with and prepared the officers, and that they were acting as his designees. Tr. 47. Further, Barth testified that ISR policy requires law enforcement officers to carry out certain tasks, including searches, for the sake of agent safety because ISR agents are "not involved in apprehensions" and "not authorized to carry weapons." Tr. 47-48, 78-79. To prevent Guevara from recognizing him or his vehicle, Agent Barth was not present during the initial stop and pat down, but he was parked nearby, was in "constant communication by cellphone," and arrived "within the minute" of the initial contact with Guevara. Tr. 52, 78. The search by officers from the Fugitive Unit was valid.

### III.   November 12, 2020 Statements

Guevara contends he was effectively in custody throughout the November 12, 2020 encounter and that his statements to the agents should be suppressed because he was never read his *Miranda* rights. Police must notify defendants of their procedural rights whenever subjecting them to custodial interrogation. *See Miranda v. Arizona*, 384 U.S. 436 (1966). A person is in custody when "there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). To determine whether a person was in custody, a court considers "whether, given the totality of the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave. *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). Interrogation under *Miranda* includes "express questioning" as well as "words or conduct that officers should know are reasonably likely to elicit an

incriminating response from the suspect." *United States v. Jones*, 842 F.3d 1077, 1082 (8th Cir. 2016) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)).

Guevara moves to suppress two sets of statements: (1) his responses to Agent Barth regarding the ownership of the flip phone and iPhone, and (2) his refusal to provide the 4-digit passcode to the iPhone to Agent Murray. Dkt. No. 81 at 1-2. Guevara claims he was not advised of his Fifth Amendment rights, even though he was "unquestionably" in custody and subject to express questioning. *Id.* The Court finds Guevara was only in custody when asked about the 4-digit passcode and recommends this statement alone be suppressed.

### A.   Ownership of Flip Phone and iPhone

Guevara argues he was in custody when Agent Barth asked him who owned the flip phone and iPhone because was not free to leave and had been found in violation of his parole conditions. Dkt. No. 147 at 12-13. The Government counters that Guevara was not in custody because his freedom of movement was unrestrained and he had not been formally arrested. The Eighth Circuit has articulated six non-exclusive considerations to determine if a person was in custody, including: (1) whether the defendant was informed that he was in custody; (2) whether the defendant possessed unrestrained freedom of movement; (3) whether the defendant or the officers instigated questioning; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the interrogation was dominated by police; and (6) whether the defendant was arrested at the end of questioning. *United States v. Griffin*, 922 F.2d 1343, 1348 (8th Cir. 1990). The Court assesses each factor in turn.

Guevara was not informed that he was in custody, nor was he informed that he was not in custody. This factor favors Guevara because, as the *Griffin* court explained, "the absence of police advisement that the suspect is not under formal arrest, or that the suspect is at liberty to decline to answer questions, has been identified as an important indicium of the existence of a custodial setting." *Id.* at 1350.

Guevara was not physically restrained during the conversation outside his residence. Tr. 65, 72. Agent Barth conceded that Guevara was not free to leave, but this does not necessarily demonstrate custody. Tr. 65-66, 80; s*ee United States v. Pelayo-Ruelas*, 345 F.3d 589, 592 (8th Cir. 2003) (rejecting the "broad contention that a person is in custody for Miranda purposes whenever a reasonable person would not feel free to leave"). A person is in custody when "there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (citation omitted). Guevara was not formally arrested nor restrained at that time. Tr. 60-61, 65-66.

Though Agent Barth unquestionably initiated questioning during the encounter, there is no evidence that he used strong arm or deceptive tactics when questioning Guevara.

The interrogation was not dominated by the police. Though there were three Fugitive Unit officers and four ISR agents present during the search, only Agent Barth questioned Guevara. Tr. 56; s*ee United States v. Axsom*, 289 F. 3d 496 (8th Cir. 2002) (finding the interrogation not dominated by police when "nine persons participated in the execution of the search warrant, [but] only two agents conducted the interview."). Further, the questions occurred on the sidewalk outside Guevara's car, not in an environment in

15

which the police often "resort to domineering practices." *Griffin*, 922 F.2d at 1352; *see also United States v. Hallmon*, No. 22-CR-365, 2023 WL 6620652, at *7 (D. Minn. July 20, 2023), r*eport and recommendation adopted*, 2023 WL 6285183 (D. Minn. Sept. 27, 2023) (finding the Home Depot parking lot was not a "domineering" environment because anyone nearby could have observed the encounter).

Lastly, Guevara was not arrested immediately following Agent Barth's questions. In fact, Agent Barth testified Guevara was not handcuffed and placed under formal arrest until the middle or end of the 45-minute compliance search. Tr. 60-61, 65-66.

Weighing the *Griffin* factors indicates Guevara was not in custody. The totality of the circumstances suggests Guevara was not in custody because the environment and the questions were not out of the ordinary for him. *See, e.g.*, *Minnesota v. Murphy,* 465 U.S. 420, 432 (1984) ("[T]he nature of probation is such that probationers should expect to be questioned on a wide range of topics relating to their past criminality."). Guevara had at least three contacts with Agent Barth each week, often accompanied by other agents and officers, during which he was searched and questioned. Tr. 27-28. Guevara has not demonstrated that any of the conditions he faced during the encounter on the sidewalk were "comparable to those associated with a formal arrest." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). The statements he made while talking to Agent Barth on the sidewalk should not be suppressed.

B.  4-Digit Passcode

Guevara also argues he was subject to custodial interrogation when Agent Murray asked him to provide the iPhone's 4-digit passcode. Dkt. No. 147 at 12-13. The Government concedes that Guevara was likely in custody but contends that the question

16

did not warrant *Miranda* warnings because Guevara's conditions of release required him to provide passwords to all his electronic devices. Dkt. No. 150 at 15; Gov. Ex. 3. The Government cites no support for this proposition. Further, the Court has found no authority providing an exception to *Miranda*'s requirements when a parolee is questioned while in custody about matters covered by his conditions of release. *See United States v. Cain*, Crim. No. 08-26, 2008 WL 2498176, at *12 n.5 (D. Minn. May 21, 2008), *report and recommendation adopted in part*, 2008 WL 2498139 (D. Minn. June 18, 2008) (requiring *Miranda* warnings when a supervised release officer questioned a parolee in custody). Guevara was in custody and asked a question designed to illicit an incriminating response. *See Jones*, 842 F.3d at 1082. He should have been provided *Miranda* warnings, and the Court therefore recommends suppressing his statement regarding the 4-digit passcode.[6]

### IV. December 8, 2020 Warrant

Guevara argues the warrant to search the devices seized on November 12, 2020 is deficient because it was not supported by probable cause and itself relied on illegally seized evidence. Dkt. No. 80 at 4-5; 147 at 14-16. As discussed above, a search warrant is supported by probable cause if "based on the totality of the circumstances set forth in the application and affidavits, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Johnson*, 528 F.3d at 579 (quoting *Gates*, 462 U.S. at 238). "[T]he duty of a reviewing court is simply to ensure that the magistrate

---

[6] In any event, the Government asserts that it is "unlikely to solicit any statements in its case-in-chief in relation to Guevara's failure to provide his Apple passcode." Dkt. No. 150 at 15 n.3.

had a substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 238-39.

The December 8, 2020 warrant was valid. As established earlier, the iPhone found in Guevara's jacket pocket was appropriately seized. Guevara was not allowed to possess it. Further, the warrant affidavit provided probable cause that evidence of a crime would be found on the iPhone. Agent Blackmore described the "partial extraction" of the iPhone, which uncovered "77 images of child pornography[, ]27 images of child erotica," and child pornography videos. Gov. Ex. 5; Tr. 62. Guevara waived any challenge to the warrantless extraction when he signed the Electronic Device Agreement, which informed him he had "no expectation of privacy regarding the use of any electronic device or the information stored on any electronic device" and could expect "examination at any time or for any reason, with or without reasonable suspicion, by Supervising Agent/Designee, of any and all electronic devices."[7] Gov. Ex. 3; *see also Cain*, 2008 WL 2498176, at *7-8 (upholding the warrantless search of a parolee's computer after his arrest, pursuant to a condition of release). The evidence found on the iPhone provides more than a fair probability that evidence of a crime would be found on Guevara's devices. *See Johnson*, 528 F.3d at 579.

Even without evidence about the unauthorized iPhone or its contents, the warrant remains valid. The warrant affidavit described Guevara's criminal history as a predatory child sex offender, the CI's tip that Guevara would hide unauthorized devices when his

---

[7] Agent Barth testified that the ISR agents accompanying him during the compliance search were his "designees," for the sake of seizing and searching unauthorized devices. Tr. 23. ISR Agent Murray assisted with the compliance search, seized the phone at that time, and executed the partial extraction. Tr. 57-58, 62-64.

ISR agent visited, the compliance search that uncovered other unauthorized devices, and how an offender could use the specific devices found to produce, use, or distribute child pornography. Gov. Ex. 5. All this information provides the magistrate judge a substantial basis for concluding that evidence of child pornography possession would be found on Guevara's devices. *See Johnson*, 528 F.3d at 579.

## RECOMMENDATION

For the reasons stated above, the Court RECOMMENDS THAT:

1. Guevara's Motion to Suppress Searches and Seizures [Dkt. No. 80] be **DENIED**.

2. Guevara's Motion to Suppress Post-Arrest Statements [Dkt. No. 81] be **GRANTED in part and DENIED in part.**

   a. Guevara's Motion to Suppress Moran's observation in the October 15, 2018 warrant [Dkt. No. 81 ¶ 4] be **DENIED**.

   b. Guevara's Motion to Suppress statements regarding the ownership of the flip phone and iPhone [Dkt. No. 81 ¶ 2] be **DENIED**.

   c. Guevara's Motion to Suppress statements regarding the 4-digit iPhone passcode [Dkt. No. 81 ¶ 3] be **GRANTED**.

Dated: April 5, 2024  	    s/David T. Schultz
  	DAVID T. SCHULTZ
  	U.S. Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).