UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

United States of America,                                    File No. 21-cr-241 (ECT/DTS)

        Plaintiff,

v.                                                                        **OPINION AND ORDER**

Peter Michael Guevara,

        Defendant.

---

Laura Provinzino, United States Attorney's Office, Minneapolis, MN, for Plaintiff United States of America.

Paul C. Engh, Minneapolis, MN, for Defendant Peter Michael Guevara.

---

Defendant Peter Michael Guevara is charged with one count of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) and (b)(1), and one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(1).  ECF No. 1.  In October 2022, Mr. Guevara filed several pretrial motions, including a motion to strike prejudicial surplusage from the indictment and motions to suppress evidence.  ECF Nos. 75–81.

In an Order dated April 5, 2024, Magistrate Judge David T. Schultz denied Mr. Guevara's motion to strike prejudicial surplusage.  ECF No. 151 ¶ 6.  In a Report and Recommendation also dated April 5, Judge Schultz recommended denying Mr. Guevara's motions to suppress except as to one statement Mr. Guevara made while in custody.  *See* ECF No. 152 ("R. & R.").  Mr. Guevara objected to the April 5 Order.  ECF No. 155 at 1–

3.   He also objected to the Report and Recommendation to the extent it denied his suppression motions.  *See id.* at 3–24.  The Government neither objected to the Report and Recommendation nor responded to Mr. Guevara's objections.

Judge Schultz's denial of Mr. Guevara's motion to strike is reviewed for clear error.  D. Minn. LR 72.2(a)(3)(A).  The decision will be affirmed because the objected-to content comes almost verbatim from the applicable statute and is information the Government intends to prove at trial.  The Report and Recommendation is reviewed de novo.  28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b)(3).  Except for the suppression of Mr. Guevara's November 12, 2020 statements regarding ownership of certain cell phones, Mr. Guevara's objections will be overruled, and the Report and Recommendation will be accepted.

I

Familiarity with the facts described in the Report and Recommendation is presumed.  Still, a brief overview of the timeline of events is helpful.  Mr. Guevara has previously been convicted of possessing pornographic works involving minors in violation of Minn. Stat. § 617.247.4(a).  Ex. 4 at Bates No. -2781;[1] *see also State v. Guevara*, No. 71-CR-13-217 (Minn. Dist. Ct. 2014).  After being released to supervision, Mr. Guevara removed his GPS device and absconded from supervision.  *See* Ex. 4 at Bates No. -2787.

---

[1]   The Government introduced six exhibits at the January 10, 2024 motions hearing before Judge Schultz.  Citations to "Ex. __" refer to those exhibits.

He was arrested in another state and returned to Minnesota, where his supervision was revoked. *Id.*; Ex. 6 ¶ 7.[2]

On April 27, 2020, Mr. Guevara was released from confinement and placed on Intensive Supervised Release (or "ISR"). Ex. 1 at 1. As part of ISR, Mr. Guevara was subject to conditions. Relevant here, Mr. Guevara was required to "disclose to the agent/designee all computers, internet capable devices, or digital storage devices within [his] possession or control within 24 hours of first possessing or accessing such devices." Ex. 1 at 1. Further, "[a]ll devices [were] subject to search and monitoring," and Mr. Guevara was "responsible for any material found on those devices." *Id.* Mr. Guevara was also subject to ISR "Policies and Procedures," which dictated that he was to have only "**one** active cell phone," that he must obtain permission "before purchasing or possessing an internet-capable tablet," and that he was subject to random compliance checks or "contacts." Ex. 2 at 3–4. Finally, Mr. Guevara was subject to an "Electronic Device Agreement," which authorized unannounced examinations "at any time or for any reason, with or without reasonable suspicion, of any electronic device in [his] possession." Ex. 3 at 1. Mr. Guevara signed each document imposing these conditions. *See* Exs. 1–3.

In November 2020, the ISR agent supervising Mr. Guevara, Corey Barth, received a tip from a confidential informant that Mr. Guevara possessed unauthorized electronic

---

[2]     The pages in Ex. 6 are not numbered. Deputy Marshal Moran's affidavit begins on the ninth page and its paragraphs are numbered. Citations to paragraph numbers refer to those paragraphs.

devices that he would hide during compliance searches.  Tr. 43:4–45:10.[3]  Based on this

tip, Agent Barth orchestrated a compliance search of Mr. Guevara.  *Id.* 45:18–47:13.  He

enlisted the help of three officers from the Department of Corrections ("DOC") Fugitive

Unit, who were waiting outside Mr. Guevara's residence when Mr. Guevara returned from

work on November 12, 2020.  *Id.* 47:2–49:15, 52:17–24.  Three other ISR agents also were

present.  *Id.* 51:25–52:6; *see also* Ex. 4 at Bates No. -2800 (DOC officer's report describing

the search).[4]  The DOC officers approached Mr. Guevara's car, told him he was being

detained, conducted a pat-down search, and found an unauthorized Apple iPhone and SD

cards on Mr. Guevara's person and an authorized flip phone in his car.  Ex. 4 at Bates No.

-2800; Tr. 52:17–55:13.  When asked, Mr. Guevara stated that the flip phone belonged to

him, but that the iPhone belonged to a friend; Mr. Guevara declined to provide the iPhone's

passcode.  Tr. 53:17–55:3, 58:1–19.  Later searches of the iPhone revealed it contained

personal information of Mr. Guevara, child pornography, and child erotica.  *Id.* 62:6–63:18.

On November 16, 2021, a grand jury returned a two-count Indictment charging

Mr. Guevara with receipt of child pornography and possession of child pornography.  ECF

No. 1.  Both counts appear to stem from the materials discovered on the iPhone.  *Id.*

Mr. Guevara filed pretrial motions in October 2022.  ECF Nos. 75–81.  Judge Schultz held

---

[3]      Citations to "Tr. __" reference the sealed transcript of the January 10 hearing before
Judge Schultz.  ECF No. 146.

[4]      Exhibit 4 is Agent Barth's Supervised Release Violation Report.  *See* Ex. 4;
Tr. 50:14–51:11.  Agent Barth attached DOC officers' reports to his own report.  *See* Ex.
4 at Bates Nos. -2793 through -2803.  The DOC officers' reports contain watermarks that
say "DRAFT."  *See id.*  The parties treat the reports as if the information contained in them
is accurate, and there is no reason to doubt that it is.  *See* Tr. 51:12–24.

a hearing on these motions on January 10, 2024, at which Mr. Guevara was present, represented by counsel, and Agent Barth testified.  ECF Nos. 142, 146.

## II

Mr. Guevara first objects to Judge Schultz's order, ECF No. 151, denying his motion to strike prejudicial surplusage, ECF No. 79.  Judge Schultz's ruling on this non-dispositive motion will be reversed only if it is "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); D. Minn. LR 72.2(a)(3)(A).  This standard of review "is extremely deferential."  *Magee v. Trs. of the Hamline Univ.*, 957 F. Supp. 2d 1047, 1062 (D. Minn. 2013) (citations omitted).  "A ruling is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed.  A decision is contrary to law when a court fails to apply or misapplies relevant statutes, case law or rules of procedure."  *Smith v. Bradley Pizza, Inc.*, 314 F. Supp. 3d 1017, 1026 (D. Minn. 2018) (citations and internal quotation marks omitted).

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  Under Federal Rule of Criminal Procedure 7(d), a court may strike surplusage from an indictment on a defendant's motion.  Rule 7(d) provides "a means of protecting the defendant against immaterial or irrelevant allegations in an indictment . . . which may, however, be prejudicial."  Fed. R. Crim. P. 7(d) advisory committee's note to 1944 adoption.  "A motion to strike surplusage from an indictment . . . should be granted only where it is clear that the allegations contained therein are not relevant to the charge made or contain inflammatory

and prejudicial matter." *United States v. Michel-Galaviz*, 415 F.3d 946, 948 (8th Cir. 2005) (quoting *Dranow v. United States*, 307 F.2d 545, 558 (8th Cir. 1962)).

Mr. Guevara argues that the inclusion of his prior conviction in each count of the Indictment is "obviously inflammatory and prejudicial," and seeks to have the references to his prior conviction stricken. ECF No. 79. Each count in the Indictment alleges that Mr. Guevara,

> having been previously convicted under the law of the State of Minnesota relating to the aggravated sexual abuse, sexual abuse; or abusive sexual conduct involving a minor, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, namely a conviction on or about June 4, 2014, in Sherburne County, Minnesota, for Possession of Pornographic Work of Minors

knowingly received child pornography (Count 1) and knowingly possessed child pornography (Count 2). ECF No. 1 at 1–2. Mr. Guevara argues that because his past conviction serves as a sentencing enhancement and not an element of the crimes charged, its inclusion is prejudicial. ECF No. 79 at 2. If read to the jury, Mr. Guevara claims, his presumption of innocence "will be eviscerated." *Id.* The Government argues the language in the Indictment is "accurate, relevant, and not prejudicial." ECF No. 139 at 7.

Judge Schultz denied the motion to strike because the Government intends to prove the prior conviction at trial. ECF No. 151 ¶ 6. He concluded that "the language in the Indictment is relevant to the charges and neither unfairly inflammatory nor unfairly prejudicial," citing *Michel-Galaviz*, 415 F.3d at 948. *Id.* In *Michel-Galaviz*, the Eighth Circuit affirmed a district court's denial of a motion to strike surplusage. The defendant, Michel-Galaviz, objected to the indictment's inclusion of the specific methamphetamine

quantity he was alleged to have possessed.  The Eighth Circuit held "the amount of meth alleged in the indictment is relevant to a violation of 21 U.S.C. § 841, which prohibits the unlawful act of possession with the intent to distribute.  The quantity of drugs is relevant to proving intent to distribute."  *Michel-Galaviz*, 414 F.3d at 948.  Here, the statute under which Mr. Guevara is charged—18 U.S.C. § 2252—specifically references past convictions such as Mr. Guevara's.  *See* § 2252(b)(1).  The Indictment's language copies the statute.  Further, courts in this District have held that information the Government intends to prove at trial "cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)."  *United States v. Kueng*, No. 21-cr-108 (PAM/TNL), 2021 WL 5564558, at *2 (D. Minn. Nov. 29, 2021) (quoting *United States v. Lov-It Creamery, Inc.*, 704 F. Supp. 1532, 1551 (E.D. Wis. 1989)); *see also United States v. Rehak*, No. 08-cr-0072 (PJS/SRN), 2008 WL 2828886, at *8 (D. Minn. July 21, 2008) ("As long as the Government's evidence at trial parallels the factual allegations, the surplusage is not inflammatory or prejudicial.").  The Government has stated it intends to prove at trial that Mr. Guevara has the prior conviction.  ECF No. 139 at 7.

For those reasons, and based on the Government's representation that it will not object to a motion in limine to minimize any prejudice, ECF No. 139 at 8 n.1, Mr. Guevara's objection will be overruled, and the order denying the motion to strike surplusage will be affirmed.

III

Mr. Guevara also objects to Judge Schultz's recommendations to deny his motions to suppress searches and seizures and post-arrest statements, ECF Nos. 80–81.  Each motion is addressed separately and reviewed de novo.

A

Judge Schultz recommends denying Mr. Guevara's motion to suppress the November 12, 2020 arrest and search of Mr. Guevara and seizure of his items, R. & R. at 7–13.  Mr. Guevara objects, claiming the search and seizure were "suspicionless" and violated the Fourth Amendment.  ECF No. 155 at 7.  He claims that, despite consenting to the searches, reasonable suspicion was needed to conduct a search and the information provided by a confidential informant could not have given the officers that reasonable suspicion.  ECF No. 155 at 7–8.  This is not persuasive.

Mr. Guevara agreed to random compliance checks and unannounced examinations of any electronic devices in his possession "with or without reasonable suspicion."  Ex. 3 at 1; *see generally* Exs. 1–3; *see United States v. Drake*, No. 20-cr-49 (NEB/KMM), 2020 WL 8713660, at *6 (D. Minn. Nov. 25, 2020), *report and recommendation adopted*, No. 20-cr-49 (NEB/KMM), 2021 WL 363968 (D. Minn. Feb. 3, 2021) (noting that "[n]either the Supreme Court nor the Eighth Circuit have answered whether a suspicionless search of a probationer subject to a suspicionless search condition is per se permissible under the Fourth Amendment," but upholding the search in that instance).  The Government has an interest in "'apprehending violators of the criminal law, thereby protecting potential victims' from persons more likely to break the law than the average citizen; and

reintegrating the probationer into society," which is "substantial" and "surely heightened when the crimes at issue involve sexual exploitation of children." *Id.* (quoting *United States v. Knights*, 534 U.S. 112, 120–21 (2001)).  Here, as in *Drake*, Mr. Guevara's privacy interests are "significantly diminished" due to his ISR status and the release conditions to which he agreed.  Mr. Guevara's crimes also involve the sexual exploitation of children, and the Government's interest in protecting potential victims is strong.

If Mr. Guevara's consent and the Government's strong interests weren't enough, the confidential informant's tip created reasonable suspicion.  A "confidential informant's tip may support a reasonable suspicion if it has sufficient indicia of reliability, such as the informant's track record as a reliable source or independent corroboration of the tip." *United States v. Manes*, 603 F.3d 451, 456 (8th Cir. 2010) (citation omitted).  The record shows the informant was generally trustworthy.  Agent Barth testified that he received information "on two different occasions" from the informant, including this one.  Tr. 43:9–44:22.  Previously, the informant told Agent Barth that Mr. Guevara had been driving a motor vehicle without authorization.  *Id.*  When Agent Barth followed up on the tip by interviewing Mr. Guevara, Mr. Guevara "admitted to driving the vehicle, and that resulted in a restructure of his release, which is a technical violation." *Id.*; *see also* Ex. 4 at Bates No. -2789.  In other words, the informant's prior tip regarding Mr. Guevara was accurate, verified by Mr. Guevara himself, and led to the discovery of a technical violation by Mr. Guevara.  Further, the informant knows Mr. Guevara personally.[5]  And the informant

---

[5]     The record is unclear as to whether the informant is related to Mr. Guevara.  When asked if the informant is a member of Mr. Guevara's family, Agent Barth declined to say,

provided Agent Barth with reasonably specific information concerning Mr. Guevara's possession of a smartphone, including that he would hide it "in a common area, specifically . . . in the basement" during compliance checks.  Tr. 43:9–44:22.  After receiving the informant's tip by email, Agent Barth reached out to the informant by phone to confirm the tip and gather more information.  *Id.* 45:8–13.  Lastly, Mr. Guevara has a demonstrated history of non-compliance with the terms of his supervised release.  *See, e.g.*, Ex. 4 at Bates No. -2787 (describing Mr. Guevara's "prior violations on file," including having been revoked for possessing internet-capable devices on multiple occasions).  These facts show that the informant and the informant's information checked enough boxes to give officers justification to search Mr. Guevara.

Mr. Guevara further challenges the November 12 seizure because, he claims, only his supervising agent (ISR Agent Barth) or his designee was authorized to conduct a search.  Mr. Guevara argues the DOC officers who initiated the search were not authorized, designated, or deputized, and, as such, had no authority to search him.  ECF No. 155 at 13–16.  On this issue, Judge Schultz was correct in finding that "law enforcement officers may assist with probationary searches, even if not explicitly identified by a probation condition, so long as they are acting at the direction of the probation agent."  R. & R. at 12 (citing *United States v. Brown*, 346 F.3d 808, 812 (8th Cir. 2003)).  In *Brown*, the Eighth Circuit indicated courts "must balance any additional privacy intrusion resulting from the presence

---

indicating only that the informant "wanted to remain anonymous."  Tr. 67:24–68:15.  Mr. Guevara's objections identify the informant as "a Guevara relative."  ECF No. 155 at 8.

of the additional personnel against the legitimate interests advanced by their presence." *Brown*, 346 F.3d at 812.   Agent Barth's testimony that he "orchestrated the search," Tr. 52:7–10, DOC Investigator Bliven's report indicating that Agent Barth coordinated the search, Ex. 4 at Bates No. -2800, and DOC Investigator Ruzich's statement that the DOC officers "assisted" ISR agents, *id.* at Bates No. -2803, show that law enforcement acted at the direction of Agent Barth.   And Agent Barth testified credibly about the "legitimate interests advanced by" the DOC officers' presence.   Specifically, Agent Barth testified that he asked DOC officers to be present because Mr. Guevara "would potentially recognize [Barth] or [his] vehicle." Tr. 48:23–49:3.   Agent Barth was concerned that if Mr. Guevara was tipped off to his presence, he might go into his residence and be "able to hide [the phone] in a common area." *Id.* 49:19–50:3.   Agent Barth also wanted the DOC agents there for "agent safety." *Id.* 51:23–24; *see Brown*, 346 F.3d at 812 ("Probation officers often must bring law enforcement along to ensure the probation officers' safety.").   DOC officers are law enforcement officers, so they are armed, wear bulletproof vests, and have "all the equipment they usually have," whereas ISR agents "just have [their] standard clothing" and bulletproof vests.   Tr. 56:12–19.   The DOC officers were working at Agent Barth's direction and the additional privacy intrusion to Mr. Guevara was minimal compared to the officers' legitimate functions of providing safety and cover for Agent Barth.

## B

Mr. Guevara also objects to Judge Schultz's recommendation to uphold the validity of two search warrants.   ECF No. 155 at 19–24.

(1) Mr. Guevara challenges an October 15, 2019 search warrant, Ex. 6, for lack of probable cause. ECF No. 155 at 23. The warrant was obtained to search electronic devices Mr. Guevara purportedly left in Florida, after he had absconded from Minnesota DOC parole. He argues the affidavit supporting the warrant is "bare bones," and "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)). This argument is not persuasive.

Probable cause exists when a supporting affidavit "sets forth sufficient facts to establish 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Darr*, 661 F.3d 375, 380 (8th Cir. 2011) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The issuing judge "may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant[.]" *United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000) (citation omitted). An issuing judge's probable cause determination is paid "great deference" and will not be disturbed if there was a "substantial basis for concluding that probable cause existed." *United States v. Butler*, 594 F.3d 955, 962 (8th Cir. 2010) (citation omitted).

Deputy Marshal Matthew Moran submitted a twelve-page affidavit in support of an application for the warrant. *See* Ex. 6. In it, he detailed the items to be searched with particularity, down to serial numbers. *Id.* ¶ 1. He also detailed Mr. Guevara's criminal history, including that he removed a GPS monitoring bracelet, absconded from Minnesota DOC parole supervision, and was noncompliant with his required sex offender registration.

*Id.* ¶¶ 4–6.   Deputy Marshal Moran personally interviewed the woman with whom Mr. Guevara had been living in Florida, and detailed that interview in the affidavit.  *Id.* ¶¶ 9–10.   Deputy Marshal Moran also spoke with Agent Barth, and compared the electronics found in Florida to those Agent Barth knew Mr. Guevara possessed at one point. *Id.* ¶ 14.  Judge Schultz correctly concluded that these facts are sufficient to illustrate a "fair probability" that evidence of a crime would be found on Guevara's devices. Mr. Guevara's objection will be overruled.

(2) Mr. Guevara challenges a December 8, 2020 search warrant, Ex. 5, which authorized a search of the iPhone found on Mr. Guevara's person during the November 12, 2020 search.  ECF No. 155 at 19–22.  He argues both that it is not supported by probable cause and that it relies on illegally obtained evidence to reach probable cause.  *Id.*  Again, these arguments are not persuasive, and Judge Schultz's recommendation to deny the motion will be accepted.

The warrant was supported by sufficient probable cause.  FBI Special Agent Blackmore submitted an affidavit detailing the items to be searched with particularity, Ex. 5 ¶ 3[6] and details of the investigation, *id.* ¶¶ 12–27.  Those details include Mr. Guevara's criminal history, a review of Mr. Guevara's conditions of release and how they were violated, and a description of the November 12, 2020 search and seizure.  *Id.* ¶¶ 12–21. They also include a description of the data found in a preliminary analysis of the iPhone,

---

[6]      Two versions of the December 8 warrant have been provided: one attaching Special Agent Blackmore's affidavit, and one omitting it.  Citations to Ex. 5 refer to the version with the affidavit attached.  Special Agent Blackmore's affidavit begins on the fourth page, and citations to paragraph numbers reference the paragraphs in his affidavit.

including Mr. Guevara's personal information and child pornography.  *Id.* ¶¶ 22–26.
Mr. Guevara's argument that the warrant relies on illegally obtained evidence fails because
almost all of what Mr. Guevara categorizes as fruit of illegal searches is not.  The evidence
was legally obtained and admissible.  *See supra* Parts III.A & III.B.  With that evidence
properly included in Special Agent Blackmore's affidavit, there is no question the warrant
was supported by probable cause.  The facts contained in the affidavit are sufficient to
illustrate a "fair probability" that evidence of a crime would be found on Guevara's devices
because they demonstrate Mr. Guevara has a criminal history involving felony possession
of pornographic work involving children, and that he violated the conditions of his release
by possessing internet-capable devices by which he could access child pornography.  Ex.
5 ¶¶ 13–19.

## C

Mr. Guevara moved to suppress three separate statements.  (1) Mr. Guevara seeks
to suppress his statements made to officers and agents outside his car that that the flip phone
found in his car belonged to him and that that the iPhone found in his pocket belonged to
a friend.  ECF No. 81 ¶¶ 2–3.  (2) Mr. Guevara seeks to suppress his statements refusing
to provide the iPhone's passcode, also made to officers and agents on November 12, 2020.
*Id.* ¶ 3.  (3) Mr. Guevara also moved to suppress "subjective comments" made by Deputy
Marshal Moran in the 2019 search warrant.  *Id.* ¶ 4.

Two of Judge Schultz's recommendations have not been objected to and will be
adopted.  Judge Schultz recommends suppressing Mr. Guevara's refusal to provide the
passcode to the iPhone because he was in custody and had not been given *Miranda*

warnings at the time of questioning. R. & R. at 16–17. Because no party objects to the recommendation to suppress the passcode statement, and finding no clear error, *see* D. Minn. LR 72.2(b); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam), that recommendation will be adopted. As for Deputy Marshal Moran's subjective observations, Judge Schultz concludes they are not the proper subject of a motion to suppress. R. & R. at 9. Mr. Guevara may seek to preclude the introduction of that evidence at trial by filing a motion in limine. *Id.* Mr. Guevara represents that he will bring such a motion. ECF No. 155 at 22–23. Because no party objects to Judge Schultz's treatment of the third statement—reserving judgment until a motion in limine—and finding no clear error, that recommendation will be adopted.

Mr. Guevara does object to Judge Schultz's recommendation to deny his motion to suppress the statements regarding ownership of the phones, R. & R. at 13–16. Again, suppression of the phone-ownership statements is reviewed de novo. D. Minn. LR 72.2(b)(3). Mr. Guevara argues he was under arrest and had not been given *Miranda* warnings when officers asked him about the phones, so his post-arrest statements must be suppressed. ECF No. 155 at 16. After going through each custody factor enumerated in *Griffin*, Judge Schultz found Mr. Guevara was not in custody when he made the statements and recommends denying the motion. R. & R. at 14–16 (citing *United States v. Griffin*, 922 F.2d 1343, 1348 (8th Cir. 1990)).

*Miranda* governs the admissibility of statements made by a criminal defendant who is interrogated while in police custody. *Dickerson v. United States*, 530 U.S. 428, 432 (2000). The parties agree, and record evidence shows, that Mr. Guevara was questioned

15

and that he was not *Mirandized*.  ECF No. 155 at 16; ECF No. 150 at 13–14; *see* Tr. 66:9–15 (Q. "Did you give him a *Miranda* warning before you asked him any questions that day at the scene of his arrest?"  A. "No."), 53:15–20 (A. "I interviewed Mr. Guevara."  Q. "What did you ask him?"  A. "I asked him if that was his cellphone.").  Thus, whether *Miranda* was triggered turns on whether Mr. Guevara was in custody.

"An individual is in custody when placed under formal arrest, or when his or her freedom is restricted to a degree akin to formal arrest." *United States v. Elzahabi*, 557 F.3d 879, 883 (8th Cir. 2009).  Whether Mr. Guevara was in custody depends on whether "a reasonable person in his position would have felt free to end the interrogation and leave," considering the totality of the circumstances he faced at the time of questioning. *Id.*  In *United States v. Griffin*, the Eighth Circuit enumerated factors to help courts make custody determinations for *Miranda* purposes.  The *Griffin* factors are "(1) whether the suspect was informed that he or she was free to leave and that answering was voluntary; (2) whether the suspect possessed freedom of movement; (3) whether the suspect initiated contact or voluntarily acquiesced; (4) whether strong-arm tactics or strategies were employed; (5) whether the atmosphere was police-dominated; or, (6) whether the suspect was placed under arrest at the end of questioning." *Elzahabi*, 557 F.3d at 883 (citing *Griffin*, 922 F.2d at 1349).  "The first three indicia are mitigating factors which, if present, mitigate against the existence of custody at the time of questioning.  Conversely, the last three indicia are aggravating factors which, if present, aggravate the existence of custody." *United States v. Axsom*, 289 F.3d 496, 500–01 (8th Cir. 2002).  The Eighth Circuit has cautioned that "custody 'cannot be resolved merely by counting up the number of factors on each side of

the balance and rendering a decision accordingly.'" *Elzahabi*, 557 F.3d at 883 (quoting *United States v. Czichray*, 378 F.3d 822, 827–28 (8th Cir. 2004)). Each *Griffin* factor is discussed below, as well as other facts relevant to the totality of the circumstances.

(1) Mr. Guevara was neither informed that he was free to leave nor told that answering Agent Barth's questions was voluntary. "[T]he absence of police advisement that the suspect is not under formal arrest, or that the suspect is at liberty to decline to answer questions, has been identified as an important indicium of the existence of a custodial setting." *Griffin*, 922 F.2d at 1350. Such advisement is absent here. In fact, two DOC officers, Investigators Bliven and Wilmes, "advised him that he was being detained" when they initiated contact. Ex. 4 at Bates Nos. -2800, -2803. Judge Schultz correctly found that "[t]his factor favors Guevara." R. & R. at 15.

(2) The record reveals Mr. Guevara likely did not retain freedom of movement during the questioning. Agent Barth testified that he does not "believe" Mr. Guevara was restrained during the initial contact. Tr. 78:16–24. But recall that Agent Barth was not present when Mr. Guevara arrived home, to avoid tipping Mr. Guevara off to his presence. *Id.* 72:11–14, 48:23–49:15; Ex. 4 at Bates No. -2785 ("At 4:28 p.m., [Agent Barth] received a phone call from Investigator R. Ruzich, confirming [Mr. Guevara] arrived home *and was secured*[.]" (emphasis added)). DOC officers initially approached Mr. Guevara. *See* Ex. 4 at Bates Nos. -2785, -2800, -2803. Investigator Bliven wrote in his report that, upon Mr. Guevara's arrival, he approached Mr. Guevara, informed him he was being detained, and "handcuffed Guevara checking for proper fit and double locked his handcuffs." Ex. 4 at Bates No. -2800. Investigator Bliven's report indicates Mr. Guevara was handcuffed

*before* the phones were found (and thus before Mr. Guevara was questioned about them).
*Id.* It cannot be said, then, that Mr. Guevara possessed freedom of movement during the encounter.

(3) Agent Barth initiated questioning, though it appears Mr. Guevara voluntarily complied.

(4) There is no indication "strong-arm" interrogation tactics were employed during the encounter.

(5) Judge Schultz found that, though there were three DOC officers and four ISR agents present during the search and questioning, the encounter was not police dominated, citing *United States v. Axsom*, 289 F.3d 496 (8th Cir. 2002). R. & R. at 15–16. It is true that in *Axsom*, the Eighth Circuit found a scene was not dominated by police when "nine persons participated in the execution of the search warrant, [but] only two agents conducted the interview." *Axsom*, 289 F.3d at 502. But there were other—stronger—indicia that Axsom was not in custody, including that an officer "informed him he was not under arrest and that she was interested in speaking with him, if he would like to speak with her," and that Axsom said he was willing to talk with her. *Id.* at 497–98. Also relevant to the court's finding were that "[c]ommunication between the agents and Axsom consisted of two-way questioning. The agents asked questions of Axsom, but Axsom also asked the agents questions about search procedures," that "[p]hotographs of Axsom and federal agents taken at or near the time of questioning reflect a more casual scene," and that Axsom was "interrogated in the comfort and familiarity of his home." *Id.* at 502. No such indicators are present here. Seven officers and agents were present at Mr. Guevara's questioning,

Mr. Guevara was told he was being detained, the interaction took place on the street outside Mr. Guevara's residence, and he was likely handcuffed when being questioned. Unlike in *Axsom*, there is no indication this was a casual encounter.

(6) Mr. Guevara was placed under arrest at the conclusion of the November 12, 2020 encounter.

Lastly, a point which may go to any number of the *Griffin* factors: Agent Barth testified that Mr. Guevara would not have been free to leave when the officers walked up to Mr. Guevara and started questioning him. Tr. 65:10–23, 80:7–15.

Given the totality of the circumstances, and in consideration of the *Griffin* factors, a reasonable person in Mr. Guevara's situation would not have felt free to terminate the encounter and walk away. Because Mr. Guevara was in custody, was not *Mirandized*, and accordingly did not waive his *Miranda* rights, the statements made during the initial encounter should be suppressed. Mr. Guevara's objection to the recommendation to deny his motion to suppress will be sustained.

### ORDER

Therefore, based upon all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.     Defendant Peter Michael Guevara's Objections to the Report and Recommendation [ECF No. 155] are **OVERRULED in part** and **SUSTAINED in part**.

2.     The Report and Recommendation [ECF No. 152] is **ACCEPTED in part** and **REJECTED in part**.

3.      Defendant's Motion to Suppress Searches and Seizures [ECF No. 80] is **DENIED**.

4.      Defendant's Motion to Suppress Post-Arrest Statements [ECF No. 81] is **GRANTED** as to Mr. Guevara's November 12, 2020 statements and **DENIED** as to Deputy Marshal Moran's statements, without prejudice to file a motion in limine to exclude them.

5.      The Order Denying Defendant's Motion to Strike Prejudicial Surplusage [ECF No. 151] is **AFFIRMED**.

Dated:  June 6, 2024                    s/ Eric C. Tostrud
                                        Eric C. Tostrud
                                        United States District Court